In re Altman

---

IN THE MATTER OF: HUBERT Y. ALTMAN

No. 8010SC923

(Filed 2 June 1981)

1. **Municipal Corporations § 9— Civil Service Commission—no authority to appoint respondent as Fire Marshal**

   The Civil Service Commission of the City of Raleigh had no authority to entertain an appeal of the City's refusal to appoint respondent as City Fire Marshal since the Fire Marshal is a "division head" whose position is exempt from the provisions of the Civil Service Act; therefore, the Commission had no authority to appoint respondent as Fire Marshal or to award respondent "back pay" for the difference in salaries between his current rank of Fire Captain and the position of Fire Marshal.

2. **Municipal Corporations § 9— Civil Service Commission—appeal from discrimination decision—attorney's fees—order that City revise promotional procedures**

   While the Civil Service Commission of the City of Raleigh had authority to entertain respondent's appeal from a decision of the City that he had not

been the subject of discrimination in violation of City policy, the Commission had no authority to order the City to pay respondent's attorney fees or, in the alternative, punitive damages, or to order the City to prepare and submit revised promotional policies and procedures.

APPEAL by respondent Hubert Y. Altman from *Bailey, Judge.* Order entered 26 March 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 7 April 1981.

Hubert Y. Altman, an employee with the rank of Captain in the Fire Department of the City of Raleigh (hereinafter "City"), instituted this proceeding by appealing to the Civil Service Commission (hereinafter "Commission") of the City, pursuant to Sections (b) and (f) of the Civil Service Act of the City of Raleigh (1971 N.C. Sess. Laws, Ch. 1154, § 1), the decision of the City that he had "not been the subject of discrimination in violation of City policy." After a hearing on Altman's appeal, the Commission made findings which, except where quoted, are summarized as follows:

Hubert Y. Altman has been an employee of the Raleigh Fire Department (hereinafter "Department") for nineteen years. In 1973 he was promoted to the rank of Captain. In 1974, Captain Altman became Executive Secretary-Treasurer and Spokesman for the Raleigh Firefighter's Association. Altman was also Spokesman for the Raleigh Employees Benevolent Association. His activities as "union spokesman," and the publicity generated therefrom, "was a source of conflict and disagreement" between Altman and Department Chief R. E. Keith and "members of the Administration of the City of Raleigh." On 17 October 1977, Altman was transferred to the Fire Prevention Bureau of the Department as a Fire Inspector. Although initially displeased, Altman eventually "enjoyed his work in the Bureau," but he was "the only employee of the Raleigh Fire Department who has been transferred into the Fire Prevention Bureau over his objections and against his will" for longer than ninety days. In addition, the policies relating to transfers among the three divisions of the Department were "unwritten and informal."

The position of Fire Marshal of the City became vacant on or about 19 March 1979. On 3 April 1979, District Chief James Owens was assigned the duties of "Acting Fire Marshal." During the Spring of 1979, Altman "was told on several occasions that

unless he resigned as spokesman for and as a member of the Raleigh Firefighter's Association that he would be transferred back to a line company by Chief Keith," and Chief Keith told Altman that his "activities for the Association had seriously prejudiced his chances for promotion to position of Fire Marshal for the City." In April 1979, Altman was transferred over his objection by Chief Keith to "Fire Station Number 10, one of the least active stations in the Raleigh Fire Department." Altman was the "only member of the Raleigh Fire Department to have been transferred out of the Fire Prevention Bureau over his objections and against his will."

Altman "initiated" his appeal to the Commission "in a proper and timely manner" on 25 April 1979. On 30 May 1979, Chief Keith mailed a letter to the District Chiefs of the Department and all Captains in the Department with a year's experience in the Fire Prevention Bureau soliciting applications for the Fire Marshal position. Altman and several others then applied for the position. The City did not advertise for the position elsewhere.

The Commission then concluded that the City, through "its duly authorized agents," "discriminated" against Altman in violation of Section (i) of the Civil Service Act of the City of Raleigh in the following instances: (1) Chief Keith transferred Altman out of the Fire Prevention Bureau because of Altman's "labor affiliation," as a "discriminatory and punitive act" against Altman, and to "diminish the effectiveness of the union;" (2) Chief Keith told Altman he would not be considered for the Fire Marshal position "because of his labor affiliation even though [Chief Keith] said that Altman was well-qualified for that position;" (3) Chief Keith told Altman he would have to "resign his membership in the Raleigh Firefighter's Association" before Altman would be considered for further promotions and that Altman "would have to 'prove himself' loyal" to the Department administration; and (4) Chief Keith "harassed" Altman and "discriminated against him in various other areas. . . ."

The Commission also concluded that Altman was the "best qualified person in the Raleigh Fire Department for the position as Fire Marshal" since he was "the only individual applying for the job with extensive training in the areas of both fire prevention and fire suppression," and the "only applicant" who had

spent at least eighteen months as a "Line Captain" as well as eighteen months with the Fire Prevention Bureau, and because he passed the "examination for District Chief." The Commission concluded further that the appointment of District Chief James Owens as "Acting Fire Marshal" for the City had the "full force and effect of being a permanent assignment," and that the "promotion process of the Raleigh Fire Department . . . lacks sufficient objective criteria and written procedures to insure that promotions are based only on merit, fitness and competence in performance of duties." In addition, the Commission concluded that because Altman "has been forced to expend a considerable amount of money to obtain legal counsel in this matter" and that the attorneys representing the City were being paid by "the taxpayers of Raleigh including Captain Altman," Altman was entitled to reimbursement for his attorney's fees "[i]n order to correct this inequitable position . . . ."

Based upon its findings and conclusions, the Commission entered the following order on 29 November 1979:

1. Hubert Y. Altman be appointed Fire Marshal of the City of Raleigh on the condition that, upon his permanent appointment to Fire Marshal . . . , Hubert Y. Altman will no longer maintain an active status in the Raleigh Firefighter's Association.

2. Hubert Y. Altman be paid the difference in the salaries of a Fire Captain and as a Fire Marshal from the date of April 6, 1979 to the date of his permanent appointment to Fire Marshal plus any increases that he would have been entitled to during this time.

3. Interest on the back pay be paid from the date of April 6, 1979 at an annual rate of 6%.

4. Hubert Y. Altman be reimbursed for damages consisting of the cost of his legal representation by the City of Raleigh. . . .

5. In the event the City of Raleigh does not pay Hubert Y. Altman's attorney's fees, the Civil Service Commission directs that Hubert Y. Altman be compensated for the damages in the amount of attorney fees and anticipated cost of pursuing appeal, lost earnings and damages to his profes-

sional reputation in the amount of $100,000.00 as punitive damages as punishment for the wilful and deliberate acts of the City of Raleigh through its duly authorized agents by using the City Attorney's office and the appeals process as a threat and subsequent punishment.

6. The Raleigh Fire Department consider its promotional policies and procedures and present its recommendation for such changes . . . as may be necessary to eliminate the bias and discrimination inherent in the present system; such ameliorating changes to be presented to this Commission prior to review by the City Council within 90 days of the date of this order.

7. The City of Raleigh, by and through its duly authorized agents, cease and desist discrimination against the employee for union affiliation in violation of Chapter 1154, 1971 Session Laws of the General Assembly.

On 3 December 1979, the City petitioned the Superior Court for a writ of certiorari to review the decision of the Commission, and on the same day the Superior Court issued the writ. On 30 January 1980, the court granted a motion to intervene by six officers of the Department who, like Altman, had sought the Fire Marshal position. After a hearing pursuant to the writ, Judge Bailey made detailed findings and conclusions (1) that the Commission "grossly exceeded the authority and powers delegated to it by the Legislature . . ." by ordering the appointment of respondent Altman as Fire Marshal for the City "when in fact a vacancy existed in the position which had not then been permanently filled;" (2) that the Commission's finding that the "naming" of District Chief Owens as "Acting Fire Marshal" had "the full force and effect of a permanent appointment" was "unsupported by competent, material and substantial evidence on the whole record;" (3) the Commission exceeded its authority in ordering that respondent be paid the difference in salaries between the positions of Captain and Fire Marshal, with interest, retroactive to the date of District Chief Owens' "appointment" as "Acting Fire Marshal;" and (4) the Commission had no authority to order the payment of attorney's fees or, in the alternative, punitive damages, or to order the City to "prepare and submit revised promotional policies and procedures." Based on these findings and

conclusions, the court ordered (1) that the 29 November 1979 decision of the Commission be "remanded, reversed, and set aside;" (2) that the City "readvertise" within the Department for an appointment to the Fire Marshal position, and to make the appointment "based upon objective findings;" and (3) that the City not "discriminate against any applicant because of race, creed or color, or because of political or labor affiliations, or because of sex or marital status," and "in particular," not to "discriminate" against Altman. From Judge Bailey's order, respondent Altman appealed to the Court of Appeals.

*City Attorney Thomas A. McCormick, Jr., and Assistant City Attorney Francis P. Rasberry, Jr., for the petitioner appellee City of Raleigh.*

*Poyner, Geraghty, Hartsfield & Townsend, by Cecil W. Harrison, Jr., and Johnson, Gamble & Shearon, by Samuel H. Johnson, for the intervenor appellees.*

*Blanchard, Tucker, Twiggs, Denson & Earls, by Howard F. Twiggs and Charles H. Mercer, Jr., for the respondent appellant.*

HEDRICK, Judge.

We note at the outset that the City has conceded that the evidence presented before the Commission was sufficient to support the Commission's findings and conclusions that the City "discriminated" against Altman "because of his labor affiliations in transferring captain Altman out of the Fire Prevention Bureau and in stating to Captain Altman that he would not be considered for the position of Fire Marshal of the City of Raleigh."

Although numerous questions have been presented and argued by the parties on this appeal, we deem it necessary to consider only whether the Commission had the authority under the Civil Service Act of the City of Raleigh (hereinafter "Act") to enter its order dated 29 November 1979.

Chapter 1154 of the 1971 North Carolina Session Laws in pertinent part provides:

SECTION 1. That a new Civil Service Act for the City of Raleigh is adopted to read as follows:

. . .

(b) *Merit Principle.* All appointments and promotions of the City officers and employees shall be made solely on the basis of merit and fitness demonstrated by examination or other evidence of competence. However, any employee who contends that he was not promoted because of bias or for reasons not related to merit, fitness, or availability of positions, shall have the right, after exhausting all administrative remedies, to appeal his cause to the Civil Service Commission.

(c) *Employees Subject to Act.* This act shall apply to all officers and employees of the City except the following:

(1) Officials elected by the people.

(2) Employees or officials appointed by the City Council or appointed by the City Manager and approved by the City Council and their immediate secretaries.

(3) Department heads, Division heads and their immediate secretaries.

(4) Part-time or non-permanent officers or employees.

(5) Employees serving their probationary periods before becoming permanent employees, not to exceed eight months.

.  .  .

(f) *Appeal Board.* The Civil Service Commission shall act as an appeal board to hear all appeals of employees regarding violation of City policy, suspensions, layoff, removal, promotions, forfeiture of pay or loss of time; but the Board shall have no jurisdiction to hear an appeal until all administrative remedies have been exhausted pursuant to the City's established grievance procedure.

The Civil Service Commission shall have the authority to affirm, modify or reverse, as it deems necessary, those actions over which it has jurisdiction.

.  .  .

(h) *Further Duties.* The Civil Service Commission shall keep accurate records of its proceedings and shall have such

other powers and duties as are necessary to implement the provisions of this act.

(i) *Discrimination Prohibited.* No person in the service of the City or seeking admission thereto shall in any way be discriminated against or favored because of race, creed or color, or because of political or labor affiliations, or because of sex or marital status.

The record before us demonstrates that the requisites for an appeal to the Commission, as provided by Sections (b) and (f) of the Act, were properly met in the present case. The record also indicates that respondent is an employee subject to the jurisdiction of the Commission as provided by Section (c) of the Act, and the city has conceded discrimination against Altman in violation of Section (i) of the Act. The record does *not* show, however, that the *position* to which respondent sought promotion, the Fire Marshal of the City of Raleigh, is subject to the jurisdiction of the Commission under Section (c) of the Act.

[1]   The record demonstrates that the Raleigh Fire Department has three divisions and that the position of City Fire Marshal is the top position in one of those divisions. The City Fire Marshal, then, is a "Division head" as described in Section (c)(3) of the Act, and the City Fire Marshal position is exempt from the provisions of the Act. The Commission therefore has no jurisdiction over the position of Fire Marshal, and as a result had no authority to entertain respondent's appeal of the City's refusal to promote him to Fire Marshal; thus, the Commission had no authority to appoint respondent to the position of Fire Marshal, or to award respondent "back pay" for the difference in salaries between his current rank of Captain and the position of Fire Marshal.

[2]   The Commission did find that the City had discriminated against respondent by other actions, and the Commission had the authority to entertain respondent's appeal on those matters. The Commission's authority in such matters, however, is not without limits; under Section (f) of the Act, the Commission can merely "affirm, modify or reverse" in deciding an appeal, and under Section (h), the Commission "shall have such other powers and duties as are necessary to implement the provisions of this act." Such authority cannot be extended, in our opinion, to include ordering the payment of an attorney's fee or in the alternative imposing

punitive damages, or to include ordering the City to "prepare and submit revised promotional policies and procedures."

It follows, therefore, that the 29 November 1979 order of the Commission must be vacated. While the superior court reached the same result in its 26 March 1980 order, the superior court erroneously based its conclusion that the Commission had no authority to appoint respondent as Fire Marshal upon its determination that the position of Fire Marshal had *not* been permanently filled as found by the Commission. As we have determined that the Commission has no authority under the Act to entertain an appeal relating to the City's refusal to promote respondent to the position of Fire Marshal, the issue of whether the Fire Marshal position had been permanently filled is irrelevant.

Therefore, the Superior Court's order, as it relates to the authority of the Commission with respect to the promotion of respondent to the position of Fire Marshal, must be modified to show that the Commission had no authority to entertain an appeal on such a matter, and thus had no authority to appoint respondent to the Fire Marshal position or to award respondent "back pay" as measured by the difference in salaries between his current position and that of Fire Marshal. As modified, the order of the Superior Court dated 26 March 1980 is affirmed.

Modified and affirmed.

Judges ARNOLD and WEBB concur.